IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CR-71-BR

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TERRY HIGHSMITH | ORDER |

This matter is before the court on defendant's motion for compassionate release. (DE # 36.)

In 2015, defendant pled guilty to being a felon in possession of a firearm and ammunition and two counts of distribution of 28 grams or more of crack cocaine. At sentencing, although defendant was an armed career criminal and subject to a statutory mandatory term of imprisonment of 15 years on the firearm offense, the court downwardly departed approximately 30% from the bottom of the applicable guideline imprisonment range and sentenced defendant to 164 months imprisonment on each count, all running concurrently. Defendant did not appeal.

In November 2020, defendant filed the instant motion *pro se*. Pursuant to Standing Order No. 19-SO-3 (E.D.N.C. Jan. 25, 2019), the court appointed counsel to represent defendant for purposes of such a motion. Appointed counsel filed a memorandum in support of defendant's motion, (DE # 39), with supporting exhibits, (DE ## 39-1, 40). The government filed a response in opposition. (DE # 43.) Defendant filed a reply with a supporting exhibit. (DE # 44.) Later, the government filed a suggestion of subsequently decided authority, (DE # 46), and, in response to the court's order, defendant's sentence computation data and inmate discipline data, (DE # 47).

Defendant seeks a reduction in his sentence to a lesser term or time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018 ("First Step Act").[1] That statute provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

The Sentencing Commission has not issued a policy statement applicable to motions filed by defendants under this statute.[2] United States v. McCoy, 981 F.3d 271, 275 (4th Cir. 2020). "[A]s a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" Id. at 284 (citation omitted) (emphasis added).

In deciding whether a sentence reduction is appropriate, the court must also consider the applicable § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A).

---

[1] The First Step Act amended § 3582(c)(1)(A) to permit a defendant to bring such a motion. See Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).

[2] The policy statement contained in U.S.S.G. § 1B1.13 "addresses only BOP-filed motions." United States v. High, 997 F.3d 181, 186 (2021). Nonetheless, it "'remains helpful guidance even when motions are filed by defendants.'" Id. (quoting McCoy, 981 F.3d at 282 n.7). Relevant here, "[w]ith respect to medical conditions, [extraordinary and compelling] reasons include that 'the defendant is suffering from a terminal illness' or 'the defendant is . . . suffering from a serious physical or medical condition.'" Id. (quoting U.S.S.G. § 1B1.13 cmt. 1(A)(i), (ii)) (alterations omitted).

> Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner."

United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (citing 18 U.S.C. § 3553(a)).

Here, the government does not dispute that defendant has satisfied § 3582(c)(1)(A)'s threshold requirement. (Cf. Resp., DE # 43; see Mot., Exs. 2 & 3, DE # 36-2 to -3); see also United States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021) ("[T]he threshold requirement in § 3582(c)(1)(A) is non-jurisdictional and satisfied if a defendant requests the [BOP] to bring a motion on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision *or* waits 30 days from the date of their initial request to file a motion in the district court."). Therefore, the court will consider the merits of defendant's motion.

Defendant requests that the court reduce his sentence based on his release date, his age, his medical conditions which increase his risk of severe illness from COVID-19, the conditions at FCI Williamsburg where he is incarcerated, and ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.[3] (See Mot., DE # 36, at 1-2; Mem., DE # 39, at 4-5; Reply, DE # 44, at 1-2.) Defendant argues that a sentence reduction is warranted because he has rehabilitated himself and, upon release, plans to marry and obtain employment. (Mot., DE # 36, at 2-3; Mem., DE # 39, at 5-7.)

According to the government, none of defendant's identified medical conditions are risk factors for severe illness from COVID-19, and therefore, defendant has not shown extraordinary

---

[3] Information pertaining to one of the bases on which defendant relies has been filed under seal. (See Mot., DE # 27; Reply, DE # 44; Mot., DE # 45; 1/13/22 Text Order.) As such, in the publicly filed version of this order, the court has redacted the references to such information.

and compelling circumstances to justify his release. (Resp., DE # 43, at 15-17.) Even assuming such circumstances exist, the government argues, the court should deny the motion based on defendant's criminal history, lack of consistent employment when not incarcerated, and danger to society. (Id. at 18.) The government also points to the efforts the BOP has undertaken to address the spread of COVID-19 within its prison facilities to protect the health of all its inmates. (Id. at 20-22.)

"COVID-19 raises medical issues in the prison context that are particularly serious — it is highly communicable; it is aggravated by certain other medical conditions; and it can be lethal." High, 997 F.3d at 185. "[I]n considering whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, [district courts] have considered the age of the prisoner, the severity and documented history of the defendant's health conditions, and the proliferation and status of infections in the prison facility." United States v. Kibble, Criminal Action No. 2:19-00077, 2020 WL 3470508, at *2 (S.D.W. Va. June 25, 2020) (citing United States v. Brady, No. S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (collecting cases)), aff'd, 992 F.3d 326 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021). The Centers for Disease Control and Prevention's ("CDC") list of risk factors for COVID-19 complications also informs the court's evaluation. Everett v. United States, No. 4:16cr35, 2020 WL 5793428, at *3 (E.D. Va. Sept. 25, 2020).

Defendant is 55 years old, and his projected release date, with good time credit, is in about four years. He is overweight[4] and prediabetic and suffers from hypertension and residual

---

[4] Although defendant characterizes himself as obese with a BMI 29.12, (Mem., DE # 39, at 4), the CDC currently classifies a person with that BMI as overweight, see CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html (last visited Jan. 18, 2022).

4

Case 7:15-cr-00071-BR   Document 48   Filed 01/20/22   Page 4 of 8

effects on his lungs from having had tuberculosis. (Mot., Attach. 1, DE # 36-1; Mem., Ex. A, DE # 40, at 10, 12.) According to the CDC, being overweight and possibly having hypertension can make one more likely to get severely ill from COVID-19. See CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 18, 2022). Prediabetes and prior tuberculosis infection are not risk factors, although having type 1 or type 2 diabetes, current tuberculosis infection, and damaged or scarred lung tissue are. See id.

At FCI Williamsburg, 24 inmates and 25 staff are positive for COVID-19. BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Jan. 19, 2022). This is an increase in confirmed cases from two months ago. Compare id. with Harmon v. United States, No. 3:12-CR-187, 2021 WL 5769187, at *1 (N.D. Ohio Nov. 4, 2021) ("[A] review of the most current COVID-related data at that institution indicates currently, no inmates and one staff member are positive." (citation omitted)). Approximately 90% of the inmates there are fully inoculated.[5] BOP, COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/ (last visited Jan. 18, 2022). However, breakthrough infections of COVID-19 among fully vaccinated persons remain, particularly with the highly contagious Omicron variant. See CDC, Omicron Variant: What You Need to Know, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last visited Jan. 19, 2022).

As further justification for a reduction in his sentence, defendant relies on ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[5] The record does not reflect defendant's vaccination status.



Considering collectively defendant's age, his health, the conditions at FCI Williamsburg considering COVID-19 (particularly with the Omicron variant), and ███████████████ ██████████████████, the court finds that defendant has shown extraordinary and compelling reasons to warrant further consideration of his motion. The court turns its attention to the applicable § 3353(a) factors.

Prior to the instant offenses, defendant had been convicted of 8 felonies, including for

selling cocaine, breaking and entering, and being a felon in possession of a firearm, and 23 misdemeanors. (PSR, DE # 28, ¶¶ 22-36.) He violated probationary sentences more than once. (Id. ¶¶ 15, 18, 30.) When he was not incarcerated, he was sporadically employed. (Id. ¶¶ 51-55.) The instant offenses involved the possession and sale of multiple controlled substances and firearms and the possession of ammunition. (Id. ¶¶ 6-9.)

Weighing against this history is defendant's outstanding post-sentencing conduct. During the last seven years while incarcerated, defendant has not been cited for any disciplinary infractions. (Resp., Ex. 2, DE # 47-2.) He has maintained employment with good evaluations, (Mot., Attach. 4, DE # 36-4, at 1), and completed over 300 hours of programming, including the non-residential drug abuse program and the L.E.A.D. program,[6] (id. at 1-2). He has continued involvement in the L.E.A.D. Program with various leadership roles and serves as a facilitator for other courses. (Id. at 2.) He has become certified to operate a forklift, conduct safety inspections, and sanitize areas. (Id.) A recent BOP progress report recognizes, "Mr. Highsmith displays a positive attitude and []is heavily involved in his community. . . . Mr. Highsmith displays determination and readiness to be a productive and responsible citizen in his community." (Id. at 3-4.)

Defendant has served more than one-half of his sentence. (Resp., Ex. 1, DE # 47-1, at 2.) Upon release, he has financial support, (Mot., Attach. 4, DE # 36-4, at 3), and plans to move to a different area, marry his fiancée, and work as a forklift operator, (Mot., DE # 36, at 3; id., Attach. 4, DE # 36-4, at 1.)

---

[6] "L.E.A.D. is a 12-month cognitive-behavioral (skill-building) program designed to help inmate participants enhance their leadership, problem solving, communication, decision making and other necessary skills that play a critical role in community reintegration." (Mot., Attach. 4, DE # 36-4, at 2.)

In defendant's own words, "My bad decisions brought me to this place and by the renewing of my mind, I know that I'm not the mistakes of my past. I can't change my past but I can alter my future." (Id., Attach. 7, DE # 36-7, at 2.) The court has confidence defendant will do so.

Considering all the circumstances, the court concludes reducing defendant's term of imprisonment to time served satisfies the goals of sentencing, including reflecting the seriousness of the offenses, providing just punishment, and deterring crime. Defendant's motion for a sentence reduction is ALLOWED. Defendant's sentence of imprisonment as reflected in the judgment dated 31 March 2016 is REDUCED to time served on all counts. All other provisions of that judgment shall remain in effect. The BOP may delay defendant's release up to 14 days for quarantine and/or administrative reasons. The Clerk is DIRECTED to file under seal the unredacted version of this order and serve a copy of it on counsel for both parties.

This 20 January 2022.

_____
W. Earl Britt
Senior U.S. District Judge